Gary and Bonnie **BECKNER**, Individually and t/a Beckner's Supermarket, and James C. Shoff, Appellees

v.

**COPELAND CORPORATION,**
Appellant.

**Martin Harris, Appellee**

v.

**Copeland Corporation, Appellant.**

Superior Court of Pennsylvania.

Argued June 12, 2001.
Filed Oct. 11, 2001.
Reargument Denied Dec. 17, 2001.

William H. Lamb, West Chester, for appellant.

Ronald P. Carnevali, Johnstown, for Beckner, appellees.

Robert W. Claypole, Glen Mills, for Harris, appellee.

Before: DEL SOLE, President Judge, JOHNSON and BECK, JJ.

DEL SOLE, President Judge.

¶ 1 These consolidated appeals were taken following a jury verdict in favor of Appellees/Plaintiffs in an underlying product liability action. The parties stipulated to the amount of general and delay damages. Judgment was ultimately entered and this appeal followed. We affirm.

¶ 2 Appellees sought recovery for damages suffered as a result of a fire in a building which housed a grocery and an apartment. They claimed that the fire started in a corner of the market's basement in a condensing unit when a component part of the condensing unit, a capacitor, malfunctioned. It was alleged that Appellant, Copeland Corporation, supplied the defective capacitor. Following a jury trial the jury returned a verdict with answers to specific interrogatories finding that Plaintiffs proved by a preponderance of the evidence that Copeland supplied the run capacitor, that the run capacitor was defective and that the run capacitor was a substantial factor in causing the fire. Copeland's post-trial motions were denied and this appeal followed.

¶ 3 Copeland raises three claims in this appeal. It contends the trial court erred in permitting Plaintiffs to amend their complaint one week before trial and that the court's instructions to the jury did not clearly and unequivocally correct prejudicial remarks made by Plaintiffs' counsel at closing. Finally, it submits that the evidence presented was insufficient to find that Copeland supplied the capacitor at issue.

██ ¶ 4 Copeland's first contention concerns the trial court's ruling which allowed Plaintiffs to amend their complaint to substitute the term "start capacitor" with the term "run capacitor." Copeland alleges that the court's action constitutes reversible error because the amendment allowed Plaintiffs to pursue a new cause of action under a different theory of relief after the statute of limitations had expired. It further asserts it was prejudiced because of Plaintiffs' delay in seeking the amendment.

¶ 5 Amendments to pleadings are freely allowed under the Pennsylvania Rules of Civil Procedure and it is within the trial court's discretion whether to grant or deny permission to amend. *See,* Pa.R.C.P. 1033; *Trude v. Martin,* 442 Pa.Super. 614, 660 A.2d 626 (1995). "An amendment, however, may not introduce a new cause of action after the applicable statute of limitations has run." *Id.* at 635.

¶ 6 Copeland contends Plaintiffs' amendment did assert a new cause of action. It maintains that Plaintiffs changed the theory of this case from a failure of a "start" capacitor to a failure of a "run" capacitor. Copeland argues that these are two different products which each serve a different function. The trial court rejected this argument finding that the amendment sought to do nothing more than correct a technical defect in the complaint. Trial Court Opinion, 12/28/00, at 3. We find support for the trial court's ruling.

¶ 7 The original complaint, which alleged the fire was caused by the failure of a "start" capacitor, followed the misnaming of the product in a report prepared by an electrical engineer. The report, although naming the product a "start" capacitor, described the physical characteristics of a "run" capacitor. Photographs of the damaged run capacitor where attached to the report. This report and its attached photographs were provided to Copeland and a Copeland employee was permitted to examine the capacitor as part of the physical evidence preserved from the fire scene. Plaintiffs later retained another expert who offered his opinion based upon the earlier expert's identification of a start capacitor as the source of the fire. In response, Copeland's expert authored a report in which he advised that Plaintiffs' expert "erroneously identified the large oval-shaped capacitor as the starting capacitor, when, in fact the Copeland docu-

ments indicate it is the running capacitor, part number 1–0002–01." Report of Howard Prosser, 10/5/99, Plaintiffs' Motion for Leave to Amend Complaint, Exhibit G. Plaintiffs' expert then offered a supplemental report in which he stated:

> Whether the oval-base, fire igniting capacitor is a *start* or *run* capacitor, it failed in service and produced and repeated electrical burn-through in the steel shell which erupted outward and ignited combustible materials in the Beckner basement.

Report of Paul Kaczmarczik, 11/11/99, Plaintiffs' Motion for Leave to Amend Complaint, Exhibit D.

¶ 8 Presented with error in the naming of the product, Plaintiffs sought leave to amend. Copeland opposed the amendment and the court heard argument on the motion. Plaintiffs argued to the court that the amendment sought a technical change and that Copeland knew all along that Plaintiffs were referring to a run capacitor although it was misnamed in the Complaint. Plaintiffs' counsel noted that Copeland had the run capacitor examined and analyzed. Plaintiffs also reasoned that because it was Copeland's position that the fire wasn't caused by the failure of the capacitor, Copeland was prepared to defend.

¶ 9 Copeland did not claim surprise. In fact, it advised the court that it provided Plaintiffs with drawings of a start capacitor in 1995, which should have prompted Plaintiffs to recognize the mislabeling of the product due to the differences in the size and characteristics of the two capacitors. Copeland contended that it was Plaintiffs' obligation to file a complaint naming the product it claimed caused the damages. Because Plaintiffs named a start capacitor as the source, Copeland believed Plaintiffs should not be granted

leave to amend to add a completely different product.

¶ 10 From the record before us we find no error with the trial court's ruling. Plaintiffs were not seeking to change the theory of recovery based upon a different product. All along all parties were examining the run capacitor, which is oval in shape and larger in size than the start capacitor. Copeland was provided with pictures and descriptions of the run capacitor. It did not claim it was surprised or that it lacked time or ability to examine this product. Thus, we conclude the amendment sought to correct a mere technical mistake in the complaint. It did not add a new cause of action or different theory of relief in violation of the statute of limitations.

¶ 11 Copeland argues that it was nevertheless prejudiced by the amendment because a material witness, the original building owner, died before the amendment was sought. Copeland contends that because it cannot gain this individual's testimony it is unable to prove that the capacitor at issue was not a Copeland product. It asserts that a more timely amendment would have prevented this prejudice, and regardless Plaintiffs had no excuse for the delay in seeking the amendment.

■ ¶ 12 As stated, amendments to pleadings are liberally granted to secure a determination of cases on their merits whenever possible. *Rosmondo v. Life Insurance Co.*, 530 Pa. 37, 606 A.2d 1172 (1992). In this case, there is support in the record for the conclusion that Copeland was not surprised to learn that the product at issue was a run capacitor misnamed as a start capacitor. Copeland was supplied with photographs of the run capacitor and was permitted to inspect and analyze it. Its defense was posed to defend against this product. Thus, we do not find the possibility of prejudice so over-whelming as to make the court's ruling allowing for the amendment to constitute an abuse of discretion.

■ ¶ 13 In the second issue Copeland asks whether the trial court committed reversible error "by failing to instruct the jury clearly and unequivocally that Plaintiffs' counsel's highly prejudicial closing remarks ... were blatantly untrue, purposefully misleading and directly contrary to the testimony that was presented." Appellant's Brief at 1. In the argument portion of its brief Copeland lists the issue as whether the trial court erred in failing to grant Copeland's "request for a mistrial as a result of plaintiff's counsel's false closing statements." Appellant's Brief at 39. We note that not only are these two separate issues, neither issue was included in Copeland's post-trial motions, and thus these issues have been waived. Grounds not specified in a post-trial motion are deemed waived. *Brindley v. Woodland Village Restaurant*, 438 Pa.Super. 385, 652 A.2d 865 (1995).

■ ¶ 14 We note however that this claim was included in Appellant's Brief in support of post-trial motions and that the trial court responded in a single sentence in its opinion. The court stated: "The alleged prejudice suffered by the Defendant, Copeland Corporation, by counsel for Plaintiff, Martin Harris during closing arguments was properly corrected by special charge to the jury." Trial Court Opinion, 12/28/00, at 3. If we were to review the comments made by Plaintiffs' counsel and the court's charge, we too would conclude that the jury was not prejudiced by the remarks which were corrected by the trial court.

¶ 15 Copeland contends that the statements at issue led the jury to believe that it was Copeland's burden to disprove that it supplied the product. While Plaintiffs'

counsel did make such a statement, the court refused to grant a mistrial and instructed the jury to strike the statement and to disregard it. N.T. 6/19/00, at 6.14–6.15. Further, the court gave its own instructions to the jury which included proper instructions on the burden of proof and the manner in which the jury was to review the "speeches" of counsel. *Id.* at 6.21–6.23, 6.25–6.26.

 ¶ 16 A trial judge enjoys broad powers and discretion in the handling of alleged prejudicial remarks made during argument and the trial court's charge to the jury may serve to counter any prejudice which may arise from counsel's remarks. *Newman v. Consolidation Coal,* 438 Pa.Super. 703, 652 A.2d 415 (1994). A trial court's actions in response to prejudicial remarks will not be disturbed on appeal unless there is an obvious abuse of discretion. *Id.* We conclude that any prejudice generated by the remark made by Plaintiffs' counsel was cured by the court and the court did not abuse its discretion in failing to grant a mistrial.

 ¶ 17 Lastly, Copeland argues that Plaintiffs offered insufficient evidence to prove that the run capacitor at issue was a Copeland product. At trial Plaintiffs sought to show that the entire condensing unit was originally manufactured by Copeland and featured its nameplate. They also offered evidence that, while certain portions of the unit were replaced, the original run capacitor was not. In addition, comparisons were made between the capacitor and those manufactured by Copeland in 1963. The jury was presented with this evidence from which they concluded that Copeland supplied the capacitor. We conclude the evidence and the reasonable inferences to be drawn from it were sufficient to permit the jury to reach this conclusion.

¶ 18 Judgment affirmed.