**In re Taylor Intervivos Trust**

C.P. of Philadelphia County, O.C No. 3563 IV of 1939

HERRON, *J.*, Aug. 18, 2014—

## Introduction

The conflicting petitions filed by three beneficiaries of the Edward Winslow Taylor Trust and its corporate trustee raise a question of first impression. Because the trust established by Edward Winslow Taylor in 1928 contains no provisions for removing the corporate trustee, three beneficiaries seek court approval to modify the trust agreement under the broad provisions of 20 Pa.C.S.A. § 7740.1 to enable them in the future to remove a corporate trustee without cause and without petitioning the court for approval. The corporate trustee, in contrast, opposes this modification of the trust agreement. It asserts that the beneficiaries are relying on the wrong section of the PEF Code in seeking to remove the trustee. Instead of section 7740.1, the specific requirements set forth in 20 Pa.C.S.A. § 7766 for removing a trustee should control. In this issue of first impression, neither side cites precedent interpreting section 7740.1.[1] Nonetheless, both sides present vigorous, compelling arguments. Upon review of the Pennsylvania Uniform Trust Act as a whole, the beneficiaries' petition to modify the trust agreement is denied. This does not

---

1. Curiously, the three beneficiaries invoke *In re McKinney*, 2013 Pa. Super 123, 67 A.3d 824 (2013) to support their claim for modification under 20 Pa. C.S.A. §7740.1 (d). *See* 9/4/13 Elise Carr Petition, ¶ 25. But as the trustee points out in opposition, *McKinney* did not address section 7740.1(d). Instead, it applied 20 Pa.C.S.A. §7766 to analyze the factors a court should consider in analyzing a petition to remove a trustee. In so doing, the Superior Court noted that "[t]his is the first instance in which we have been asked to interpret and apply Section 7766(b)(4)...." *In re McKinney*, 67 A.3d at 830.

preclude them, however, from filing a petition seeking to remove the corporate trustee by satisfying the requisite statutory requirements of section 7766.

## Background

On February 9, 1928, Edward Winslow Taylor ("Settlor" or "Edward Taylor") executed an Agreement of Trust, which he amended on April 20, 1928 and September 15, 1930. In the initial trust document, Edward Taylor appointed The Colonial Trust Company, whose principal place of business was Philadelphia, as trustee. In the September 25, 1930 amendment, Mr. Taylor named The Pennsylvania Company for Insurance on Lives and Granting Annuities, noting that it was the successor by merger of The Colonial Trust Company.[2] Wells Fargo Bank, N.A. ("Wells Fargo") is the successor in interest of the original trustee.[3]

Edward died on February 6, 1939 and his daughter, Anna Taylor Wallace ("Anna"), became co-trustee serving until her death on August 17, 1971. With his final trust amendment, Edward Taylor emphasized that "his dominant purpose" in creating this trust was "to care for his daughter, Anna Taylor Wallace, and her children living on that date, and that the ultimate limitations as to principal and income were a secondary intent..."[4] Under the terms of the trust, the trustees were directed to distribute the net income to Anna Taylor Wallace "at convenient times" during the year throughout her lifetime.[5] Anna was given

---

2. *See* 9/4/13 Elise Carr Petition, Exs. A, B & C.
3. 9/4/13 Elise Carr petition, ¶3.
4. 9/4/14 Elise Carr petition, Ex. C (9/25/30 Trust Amendment, ¶2).
5. 9/4/13 Elise Carr petition, Ex. C (9/25/30 Trust Amendment, ¶ 3(a)).

the power by will to designate who should receive the remaining net income upon her death. Anna exercised this power of appointment and provided that her eldest child, Frank R. Wallace, Jr. should receive the net income during his lifetime.[6] Upon the death of Anna's child, the net income was to be distributed among his children, per stirpes. The trust terminates 20 years after the death of the last survivor of the Settlor, Anna Taylor Wallace, Frank R. Wallace and Frank R. Wallace, Jr. or on May 4, 2028. Upon termination, the balance in the trust shall be distributed to each of the individuals who were entitled to receive income.

Upon the death of Anna's son Frank Wallace, Jr. on May 4, 2008, Anthony T. Wallace was next in line to serve as Co-Trustee, but he renounced this position effective May 4, 2008. In August 2009, the corporate trustee, Wells Fargo, filed a Fourth and Final Account of its administration of the trust. With this accounting, Wells Fargo sought court approval under 20 Pa.C.S.A. §7740.7(b) to divide the trust into four separate trusts for each of Frank Wallace Jr.'s four surviving children. The trustee also sought court approval of the appointment of each child to serve as co-trustee with Wells Fargo of his or her own trust. This court approved the division of the trust and the appointment of each of the children as co-trustees by a December 7, 2009 adjudication. The trust was subsequently divided into four separate trusts, each with an approximate value of $1.8 million.[7]

---

6. The petition to modify the trust characterizes Frank R. Wallace, Jr. both as Anna's eldest child (¶6) and as her only child (¶ 14). *See* 9/4/13 Elise Carr petition.

7. *See* 9/4/13 Elise Carr petition, ¶¶ 2-12.

On September 4, 2013, Elise W. Carr, W. Sewell Wallace and Christopher G. Wallace ("petitioners"), who are three of the four surviving income beneficiaries of the trust as children of Frank R. Wallace Jr., filed a petition to modify the Trust Agreement. More specifically, they seek to modify paragraph FIFTEENTH of the Trust Agreement because it does not include a provision for the removal and replacement of the corporate trustee,[8] which, they maintain, is a standard provision in modern trust agreements. In essence, they propose that the trust document be amended so that in the future a corporate trustee could be removed by the beneficiaries without petitioning a court for approval.

Paragraph FIFTEENTH of the Trust presently provides as follows for the resignation of the trustee but not for its removal:

FIFTEENTH: The trustee is hereby authorized to resign as Trustee of this trust upon giving ninety day's written notice of such resignation, duly signed and acknowledged by one of its officers, and delivered personally or by registered mail to the Settlor or to the beneficiaries if the Settlor is deceased. Upon such resignation or other termination of this trust, the Trustees may account for its administration of the said trust fund to the Settlor, or to the beneficiaries if the settlor is deceased, and, upon so accounting to the satisfaction of the Settlor or the beneficiaries, may have its accounts finally settled and adjusted in and

---

8. *See* 9/4/13 Elise Carr petition, ¶ 22. In fact, the Trust Agreement does provide for the replacement of a trustee in paragraph FIFTEENTH. *See* text accompanying note.9.

by said account, and may be discharged from liability hereunder without any application to or action by any court. In case of the resignation, removal or inability to act of the Trustee, a new trustee may be appointed (1) by the settlor if alive and able to act; or (2) by the beneficiary, provided, however, that such substituted Trustee shall be a recognized banking institution in the City of Philadelphia, Pennsylvania.[9]

While paragraph FIFTEENTH does not provide for the removal of a trustee, it does provide for the replacement of a trustee who has resigned or has been removed with the special provision that the successor trustee is "a recognized banking institution in the City of Philadelphia."

The three petitioners propose modifying paragraph FIFTEENTH as follows to provide for the removal of the corporate Trustee:

A. The Trustee is hereby authorized to resign as Trustee of this Trust upon giving ninety day's written notice of such resignation, duly signed and acknowledge by one of its officers, and delivered personally or by registered mail to the beneficiaries of the Trust. Upon such resignation or other termination of this Trust, the Trustee may account for its administration of said Trust to the beneficiaries, and, upon so accounting to the satisfaction of the beneficiaries, may be discharged from liability hereunder without any application to, or action by, any Court. In the case of resignation or inability to act of the Trustee, a majority of the *sui juris* income beneficiaries shall thereupon appoint in

9. 9/4/13 Elise Carr petition, Ex. A, (February 9, 1928 Trust Agreement) paragraph FIFTEENTH

writing a substitute Corporate Trustee, which substitute Corporate Trustee shall be located in Pennsylvania.

B. From time to time and without cause, the income beneficiaries who are then *sui juris* may remove any Corporate Trustee acting hereunder by a writing delivered to such Corporate Trustee stating the effective date of the removal; provided that if there are five or fewer *sui juris* income beneficiaries, all *sui juris* income beneficiaries must consent in writing to the removal, and if there are more than five *sui juris* income beneficiaries, a majority of *sui juris* income beneficiaries must consent in writing to the removal.

C. If the *sui juris* income beneficiaries exercise their power to remove a Corporate Trustee under subparagraph (B) above, the *sui juris* income beneficiaries who consented to the removal shall thereupon appoint in writing a substitute Corporate Trustee, which substitute Corporate Trustee shall be located in Pennsylvania.

D. For the purposes of this paragraph FIFTEENTH, references to the "Trust" shall include any subdivided trust, and references to '*sui juris*' income beneficiaries" shall mean such beneficiaries of any subdivided trust. Actions taken with respect to resignation, removal or appointment of a trustee of a subdivided trust may, but need not, also be taken with respect to any subdivided trust.[10]

To support this modification of the trust agreement, the petitioners invoke 20 Pa.C.S. A. § 7740.1 and *In re*

---

10. 9/4/13 Elise Carr petition, ¶24 and proposed order.

*McKinney Trust*, 67 A.3d 824, 836 (2013). The court should approve this modification, they argue, because some of the beneficiaries consent to it, the interests of the beneficiaries who do not consent will be adequately protected and the proposed modifications are not inconsistent with a material purpose of the trust agreement.[11]

Wells Fargo vigorously opposes this petition to modify the trust agreement in its answer to the petition and subsequent motion for judgment on the pleadings. In so doing, Wells Fargo raises complex issues of statutory interpretation of the PEF Code. Wells Fargo forcefully argues that the petitioners improperly rely on Section 7740.1 (d) of the PEF Code to modify the trust agreement when the exclusive provision for removing trustees under the PEF Code is 20 Pa.C.S. §7766. Because petitioners do not even mention Section 7766, Wells Fargo concludes, their petition fails to plead the requisite facts to obtain relief. Petitioners' response that they seek to modify the trust agreement rather than remove a trustee obfuscates their ultimate objective which is to provide for the serial removal of trustees without petitioning for court approval. An analysis of the relevant PEF Code provisions underscores why this modification petition must be denied.

## Legal Analysis

Wells Fargo's motion for judgment on the pleadings asserts, inter alia, that as a matter of law the beneficiaries have relied on the incorrect PEF Code section in seeking to modify the 1928 Trust Agreement (as amended) of Edward Winslow Taylor to provide for serial removals of the

---

11. 9/4/13 Elise Carr petition, ¶¶ 25 & 26.

Corporate Trustee without court approval. Pennsylvania Rule of Civil Procedure 1034 provides that after "the relevant pleadings are closed" a party may file such a motion. Pa.R.C.P. 1034(a). In deciding this motion, a court may only consider the pleadings "and any document attached thereto." *Pfister v. City of Philadelphia*, 963 A.2d 593, 597 (Pa. Cmwlth. 2009). In this case, Wells Fargo filed its answer to the beneficiaries' petition, and the beneficiaries, in turn, have filed spirited and thorough responses to Wells Fargo's motion for judgment on the pleading.[12] The issues are therefore ripe for review.

The lively debate over the proposed modification of the 1928 Taylor Trust Agreement, as amended, to allow the beneficiaries to remove a corporate trustee without cause or without seeking court approval raises novel issues of statutory interpretation of the PEF Code and, in particular, the interrelationship of Section 7740.1(d) and Section 7766. The Pennsylvania Uniform Trust Act or Chapter 77 was added to the PEF Code on July 7, 2006, effective 120 days later. It is a complex statute that encompasses various subchapters, ranging from Subchapter A (General Provisions) through Subchapter I (Liability of Trustees). 20 Pa.C.S. §7701. Both sides in this statutory puzzle rely on sections of the PEF Code that fall within the

---

12. A core argument by Wells Fargo that the beneficiaries' petition to modify failed to set forth a viable cause of action due to failure to plead the appropriate facts comes quite close to a demurrer which should be raised by preliminary objection. *See* Pa.R.C.P. 1028(a)(4). By filing copious responses to Wells Fargo's motion for judgment on the pleadings, the beneficiaries have waived any objections to a possible procedural defect. *See generally Soto v. Nabisco*, 2011 Pa. Super. 249, 32 A.3d 787, 788 n.2 (Pa. Super. 2011), *app. Denied* 616 Pa. 659, 50 A.3d 126 (2012); *Richmond v. McHale*, 2012 Pa. Super. 1, 35 A.3d 779, 782-83 (Pa. Super. 2012)(failure of a party to object to a procedural defect constitutes waiver).

parameters of the Uniform Trust Act. In seeking to modify the Taylor Trust, the beneficiaries rely on 20 Pa.C.S.A. § 7740.1(d) which falls within subchapter D relating to creation, validity, modification and termination of the trust. In opposing the particular modification sought by three of the beneficiaries, the trustee relies on 20 Pa.C.S. 7766, which falls within Subchapter G relating to Office of Trustee. The interplay of these two sections is at the heart of resolving this issue.

The beneficiaries argue that Section 7740.1 allows modification of a trust agreement so long as the proposed modification "is not inconsistent with a material purpose of the trust."[13] Under section 7740.1, they argue, they should be permitted to modify the 1928 Trust "to include the ability of the income beneficiaries to remove the corporate trustee provided a substitute trustee is appointed."[14] More specifically, the three beneficiaries ask the court to approve a modification of the trust agreement that would allow them "from time to time and without cause" to remove any corporate trustee by a writing delivered to any corporate trustee stating the effective date of its removal so long as all the income beneficiaries agree in writing when there are five or fewer *sui juris* income beneficiaries. If there are more than five *sui juris* beneficiaries, a corporate trustee could be removed if a majority of the *sui juris* income beneficiaries agreed in writing. In essence, the three beneficiaries seek to modify the Taylor Trust Agreement so that by consent of the beneficiaries — alone — without any court petition or approval, a corporate trustee may be removed.

---

13. 4/7/14 Elise W. Carr memorandum at 1
14. 4/7/14 Elise W. Carr, memorandum at 1.

The provision of the PEF Code the beneficiaries invoke, 20 Pa.C.S.A. 7740.1, provides three methods for modifying or terminating a noncharitable irrevocable trust by consent: (a) Consent by settlor and beneficiaries; (b) consent by beneficiaries with court approval, and; (d) consent by some beneficiaries with court approval. Under Section 7740.1, the only provision that would allow modification of a trust without court approval is §7740.1(a) which allows for the modification of a trust where the settlor and all beneficiaries consent:

(a) Consent by settlor and beneficiaries — A noncharitable irrevocable trust may be modified or terminated upon consent of the settlor and all beneficiaries even if the modification or termination is inconsistent with a material purpose of the trust. A settlor's power to consent to a trust's modification or termination may be exercised by a guardian, an agent under the settlor's general power of attorney or an agent under the settlor's limited power of attorney that specifically authorizes that action.

Obviously, the petitioners cannot — and do not — rely on this subsection of Section 7740.1(a) because the settlor, Edward Winslow, has been dead for many years and all of the beneficiaries have not joined in their modification petition. Instead, the petitioners invoke 7740.1 (d) which provides for modification of a trust as follows:

(d) Consent by some beneficiaries with court approval- If not all the beneficiaries consent to a proposed modification or termination of the trust under subsection (a) or (b) the modification or termination may be approved by the court only if the court is satisfied that:

(1) if all the beneficiaries had consented, the trust could be modified or terminated under this section; and

(2) the interests of a beneficiary who does not consent will be adequately protected.

Section 7740.1(d), however, does not provide a home run for the beneficiaries for two reasons. First, although they state in very general terms that the interests of a beneficiary who did not consent would be adequately protected, they do not explain how those interests would be protected.[15] The beneficiaries argue broadly that "Section 7740.1 is clear and unambiguous" and that "the Legislature imposed only one restriction upon proposed modifications — that they not be 'inconsistent with a material purpose of the trust.'"[16] But this broad argument ignores all the elements of Section 7740.1(d). In addition to requiring that the interests of a beneficiary who does not consent is protected, Section 7740.1(d)(1) requires that "if all the beneficiaries had consented, the trust could have been modified or terminated under this section...." This requirement, though less than clear, opens the door to Well Fargo's compelling arguments that the legality of the proposed modification for removal of trustees must be analyzed in conjunction with the more specific section of the PEF Code that focuses sharply on removal of a trustee: Section 7766.

---

15. *See, e.g.* 9/4/13 Elise Carr petition, ¶ 26. In their answer to Wells Fargo's motion for judgment on the pleadings, the 3 beneficiaries seek to dodge this statutory requirement by noting merely that "Wells Fargo makes no claim that the non-consenting beneficiaries are not adequately protected in this proceeding." 4/7/14 Elise Carr answer at 4, n.1. This is placing the burden on the wrong party. Since the beneficiaries rely on Section 7740.1(d), they are required to satisfy all of its elements.

16. 4/7/14 Elise Carr answer at 2.

Section 7766 is entitled "removal of trustee" and sets forth two broad options for removing a trustee — both of which contemplate court review:

§7766. Removal of trustee — UTC 706

(a) Request to remove trustee; court authority — The settlor, a cotrustee or a beneficiary may request the court to remove a trustee or a trustee may be removed by the court on its own initiative.

(b) When court may remove trustee — The court may remove a trustee if it finds that removal of the trustee best serves the interests of the beneficiaries of the trust and is not inconsistent with a material purpose of the trust, a suitable cotrustee or successor trustee is available and:

(1) the trustee has committed a serious breach of trust;

(2) lack of cooperation among cotrustees substantially impairs the administration of the trust;

(3) The trustee has not effectively administered the trust because of the trustee's unfitness, unwillingness or persistent failures; or

(4) There has been a substantial change of circumstances. A corporate reorganization of an institutional trustee, including a plan of merger or consolidation, is not itself a substantial change of circumstances.

The three beneficiaries did not even cite Section 7766 in their initial petition to modify the trust agreement to allow removal of the corporate trustee solely by consent of the beneficiaries. In contrast, Wells Fargo

vehemently asserts that because the 1928 Taylor trust agreement did not give the beneficiaries authority to remove a corporate trustee, the default provisions of the PEF Code should be applied as to removal of trustees. It is undisputed that if Edward Winslow Taylor, as settlor, had provided for the removal of a corporate trustee that trust provision would control. The PEF Code unambiguously provides that the "Trust instrument controls" and as a consequence "the provisions of a trust instrument prevail over any contrary provisions of this chapter." 20 Pa. C.S.A. §7705(a).

If, however, a settlor fails to provide for a certain contingency in his trust document, the provisions of the PEF Code apply by default. This point is emphasized in the primary case the beneficiaries cite, *In re McKinney*, 2013 Pa. Super. 123, 67 A.3d 824, 826 (Pa. Super. 2013)("when circumstances arise that are not explicitly considered by the trust document, such as when beneficiaries request the removal of a trustee notwithstanding the trust document's lack of a portability clause, Pennsylvania's Probate, Estates and Fiduciaries Code provides a set of default rules that will govern the proceedings"). Likewise, the comments to the uniform law emphasize that the "Uniform Trust Code (UTC) is primarily a default statute." 20 Pa.C.S. §7705, Uniform Law Comment. The adoption of the UTC by the Pennsylvania legislature signified an effort to modernize trust law while providing a structure and guidance for courts. It is well established, for instance, that the UTC "expanded the circumstances in which trustee removal will be granted." *In re McKinney*, 67 A.3d at 832, n. 12. Yet in expanding the circumstances in which a trustee can be removed where a settlor failed to provide how to do

so, the PEF Code provides the guidelines for modifying the trust or removing a trustee. Determining the proper PEF Code provision applicable to the beneficiaries' modification petition is not a backward-looking exercise but an essential task to assuring the legality of the proposed modification.

Section 7766 of the PEF Code as adopted by the Pennsylvania legislature clearly does not allow for removal of a trustee based on the consent of some — or all — of the trust beneficiaries. The comparatively recent trust provisions of the Pennsylvania PEF Code are modeled on the UTC. Section 7766(b)(4) is "substantially similar to the UTC" except that the UTC permitted removal of a trustee when all the beneficiaries agreed. The Pennsylvania legislature did not adopt that provision,[17] in contrast to the legislatures of other states such as Vermont, Maine and Arkansas which allow removal of a trustee based on the agreement of all beneficiaries.[18]

Prior to the Pennsylvania legislature's adoption of Chapter 77 of the PEF Code, a trustee could be removed primarily by a showing of fault or negligence. With the addition of 20 Pa.C.S. §7766(b)(4) a "no-fault" provision for the removal of a trustee was added but a party seeking removal had to satisfy all the requirements of section 7766(b)(4). In other words, a party seeking to remove a trustee under Section 7766(b)(4) "must show by clear and convincing evidence that: (1) the removal serves the beneficiaries' best interests; (2) the removal is not

17. *In re McKinney*, 67 A.3d at 831, n. 8 *See also* Jt. St. Govt. Comm. Comment — 2005.
18. *See, e.g.* 14A V.S.A. § 706(b)(5); 18-B M.R.S.A. §706(2)(D); A.C.A. §28-73-706(b)(4).

inconsistent with a material purpose of the trust; (3) a suitable successor trustee is available; and (4) a substantial change in circumstance has occurred." *In re McKinney*, 67 A.3d at 830. In this case, the three beneficiaries' modification petition does not address — let alone satisfy — these requirements for removal under the no fault provisions of Section 7766.

In determining whether these prerequisites for removal have been satisfied by petition, the statute contemplates "an active inquiry and findings by the court"[19] not the passive acquiescence suggested by the beneficiaries. In fact, in its recent analysis of Section 7766(b)(4), the Pennsylvania Superior court outlined numerous factors for a court to analyze under this section:

> We conclude that courts should consider the following factors when determining whether a current trustee or a proposed successor trustee best serves the interest of the beneficiaries: personalization of service; cost of administration; convenience of the beneficiaries; efficiency of the service; personal knowledge of trusts' and beneficiaries' financial situations; location of a trustee as it affects trust income tax; experience; qualifications; personal relationship with beneficiaries; settlor's intent as expressed in the trust document; and any other material circumstance.

*In re McKinney*, 67 A.3d at 833.

In cementing its argument that Section 7766(b)(4) rather than Section 7740.1 applies in this instance, Wells Fargo invokes the rules of statutory interpretation. The

---

19. 20 Pa.C.S.A. §¶7766, Jt. St. Govt. Comm. Comment-2005.

beneficiaries counter that Section 7740.1 is unambiguous; hence statutory interpretation rules are unnecessary. But, as Wells Fargo suggests, the interrelationship between Sections 7740.1 and 7766 create a clear ambiguity within the Pennsylvania Uniform Trust Act which spans both of these sections. *See* 20 Pa.C.S. §7701. A key rule in statutory construction is ascertaining legislative intent. Rather than looking at piecemeal sections of the comprehensive statute, the "general assembly intends the entire statute to be effective and certain." 1 Pa.C.S.A. §1922(2). Under these rules of construction, "[s]tatutes in pari material shall be construed together, if possible, as one statute" and statutes are in pari material "when they relate to the same persons or things or to the same class of persons or things." 1 Pa.C.S.A. § 1932(a) & (b). The beneficiaries assert that these two sections do not relate to the same thing, yet that argument is undermined by their insistence that the general provisions for modifying a trust under Section 7740.1 should be applied to the specific task of removing a corporate trustee. Clearly, the beneficiaries seek to apply Section 7740.1 to the same thing as Section 7766: removal of a trustee. However, where there is a conflict between a general statutory provision and a more specific provision, the specific provision controls. In fact, there is a clear statutory rule of interpretation that a particular statutory provision controls the general provision where there is a conflict:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to

the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the general assembly that such general provision prevail.

1 Pa.C.S.A. § 1933

It clearly was not the manifest intention of the Pennsylvania legislature to allow beneficiaries to remove a trustee based on their agreement and without satisfying the requirements of Section 7766 where the Settlor made no provision for trustee removal. The beneficiaries' attempt to use the broad modification provisions in Section 7740.1 to eviscerate Section 7766 must therefore yield to the specific removal provisions of Section 7766. In reaching this result, it is important to clarify, however, the practical implications or limitations of this holding. The beneficiaries have not raised the more specific issue of whether Wells Fargo should be removed as Corporate Trustee. Nothing in this opinion precludes them from seeking the removal of this Corporate Trustee upon petition and satisfaction of the statutory requirements.

## Conclusion

For all of these reasons, the petition filed by Elise W. Carr, W. Sewell Wallace and Christopher Wallace to modify the Trust Agreement of Edward Winslow Taylor dated February 9, 1928, as amended, is denied. The motion for judgment on the pleadings filed by Wells Fargo Bank, N.A. is granted as set forth in a contemporaneously issued decree. This ruling is without prejudice to file a petition to remove the Corporate Trustee.